2013R00225:FJN

RECEIVED

MAY 15 2014

AT 8:30 _____ M
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : Crim. No. 14-274 (MAS) |
| v. | : 18 U.S.C. § 1341 |
| | : 18 U.S.C. § 2 |
| MARIJAN CVJETICANIN | : |

**I N D I C T M E N T**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

### Counts 1-6
### (Mail Fraud)

#### Relevant Entities and Individuals

1. At all times relevant to this Indictment unless otherwise specifically noted:

    a. Company A was a business outsourcing company that had its global headquarters in Essex County, New Jersey.

    b. Company B provided investor communications and technology-driven-solutions to financial industry businesses and other companies. Company B had offices in Hudson County, New Jersey.

    c. "Law Firm A" was a law firm located in New York, New York that specialized in immigration law. Law Firm A served as outside counsel to Company A and Company B for immigration matters.

      d.    Defendant MARIJAN CVJETICANIN ("CVJETICANIN") was employed by Law Firm A from approximately September 1996 through approximately September 2012. During the majority of his employment with Law Firm A, CVJETICANIN worked as a paralegal. In or around 2010, CVJETICANIN became licensed to practice law in the State of New York.

      e.    Flowerson Holdings, Inc., a/k/a Flowerson Advertising ("Flowerson"), was a purported advertising agency located in New York, New York that was controlled by CVJETICANIN.

### Background and Overview of the Immigration Process

2. Many companies in the United States, including Company A and Company B, employed foreign nationals through a temporary non-immigrant visa known as an "H-1B" visa, which had to be approved by the United States Citizenship and Immigration Services ("USCIS").

3. In general terms, an H-1B visa allowed employers based in the United States to temporarily employ foreign workers in certain specialty occupations for a period of time.

4. If an employer wished to apply for permanent residency on behalf of an employee, the employer had to demonstrate, among other things, that it had a need to hire a foreign worker for a specific position and that there was no minimally qualified United States citizen available to fill that particular position. To meet those requirements, an employer had to engage

in recruiting by, among other things, placing print advertisements in the geographic location where the position was located, and had to attest in a labor certification submitted to the United States Department of Labor ("DOL") that it had advertised for the specific position and interviewed any qualified applicants.

5. A significant percentage of Law Firm A's representation of Company A and Company B involved preparing applications for permanent residency for certain foreign-citizen employees of Company A and Company B. CVJETICANIN was the case manager for these matters and handled the day-to-day tasks, including, among other things, overseeing the recruiting and job advertising process, and coordinating with representatives of Company A and Company B to gather relevant information pertaining to the DOL certifications.

6. To fulfill the advertising requirements of the DOL certification process, Law Firm A had long utilized the services of a third-party advertisement agency.

### The Scheme to Defraud

7. From at least as early as 2010 through in or about September 2012, in the District of New Jersey and elsewhere, defendant

MARIJAN CVJETICANIN

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud Company A and Company B and to

3

obtain money and property from Company A and Company B by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice to defraud was in substance as set forth below, and for the purpose of executing such scheme and artifice, knowingly and intentionally caused to be placed in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the United States Postal Service.

### Object of the Scheme to Defraud

8.  It was the object of the scheme to defraud for CVJETICANIN and others to obtain money and property from Company A and Company B by fraudulently billing and collecting monies from Company A and Company B for services which Flowerson never provided.

### Manner and Means of the Scheme to Defraud

9.  It was part of the scheme to defraud that at some point prior to January 2010, CVJETICANIN caused Law Firm A to replace the existing advertising agency with Flowerson.

10. It was further a part of the scheme to defraud that from at least 2010 through in or about September 2012, CVJETICANIN concealed his interest and control of Flowerson from Law Firm A, Company A, Company B, and others.

11. It was further a part of the scheme to defraud that beginning in or about January 2010 and continuing through

4

September 2012, Flowerson purportedly handled all of the advertisement obligations of Company A and Company B in connection with DOL certifications for permanent residency applications.

12. It was further a part of the scheme to defraud that throughout this time, CVJETICANIN sent over $500,000 in invoices on behalf of Flowerson to Company A and Company B in New Jersey by mail for advertising services allegedly rendered.

13. It was further a part of the scheme to defraud that the invoices contained false and fraudulent statements because neither CVJETICANIN nor Flowerson placed many of the advertisements for which Company A, Company B, and others were invoiced.

14. It was further a part of the scheme to defraud that CVJETICANIN and Flowerson caused Company A and Company B to pay the fraudulent invoices under the belief that the relevant advertisements had been placed.

15. It was further a part of the scheme to defraud that from in or about August 2010 through in or about September 2012, CVJETICANIN deposited into a checking account maintained by Flowerson at TD Bank (the "Flowerson TD Account") the payments that Company A and Company B made to Flowerson for advertisements allegedly placed.

16. It was further a part of the scheme to defraud that during that time period, CVJETICANIN disbursed funds from the

Flowerson TD Account for the benefit of himself, his family, and other entities controlled by him. Among other things, CVJETICANIN used the funds obtained from Company A and Company B to finance his lifestyle and service his debts.

17. On or about the dates shown below, in the District of New Jersey and elsewhere, having devised and intending to devise the above-described scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, defendant

MARIJAN CVJETICANIN

for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, knowingly and intentionally placed and caused to be placed in a post office and authorized depository of mail, and caused to be delivered thereon, certain mail matter, namely fraudulent invoices to be sent and delivered by the United States Postal Service, and by any private and commercial interstate carrier to Company A and Company B in the District of New Jersey.

| Count | Date | Amount | Originator | Recipient |
|---|---|---|---|---|
| 1 | January 26, 2010 | $3,150 | Flowerson | Company A |
| 2 | March 6, 2011 | $3,128 | Flowerson | Company A |
| 3 | September 22, 2011 | $3,242 | Flowerson | Company B |
| 4 | January 4, 2012 | $3,380 | Flowerson | Company B |
| 5 | January 5, 2012 | $3,222 | Flowerson | Company A |
| 6 | April 1, 2012 | $3,629 | Flowerson | Company B |

6

In violation of Title 18, United States Code, Sections 1341 and 2.

## FIRST FORFEITURE ALLEGATION

1. The allegations contained in all paragraphs of Counts 1 through 6 of this Indictment are hereby realleged and incorporated by reference for the purpose of noticing forfeitures pursuant to Title 28, United States Code, Section 2461(c).

2. The United States hereby gives notice to the defendant that, upon conviction of the offenses charged in Counts 1 through 6 of this Indictment, the government will seek forfeiture, in accordance with Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(C), of any and all property, real or personal, that constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Sections 1341, alleged in Counts 1 through 6 of this Indictment, including but not limited to a sum of money equal to at least $431,890 in United States currency.

3. If by any act or omission of the defendant, any of the property subject to forfeiture described in paragraph 2 herein:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

8

        c. has been placed beyond the jurisdiction of the court;

        d. has been substantially diminished in value; or

        e. has been commingled with other property which cannot be subdivided without difficulty, the United States of America will be entitled to forfeiture of substitute property up to the value of the property described above in paragraph 2, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

        A TRUE BILL.

_____

*Paul J. Fishman* (signature)

PAUL J. FISHMAN
United States Attorney

CASE NUMBER: 14- 274 (MAS)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

v.

MARIJAN CVJETICANIN

## INDICTMENT FOR
18 U.S.C. § 1341
18 U.S.C. § 2

A True Bill.

_____

PAUL J. FISHMAN
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

Francisco J. Navarro
*ASSISTANT UNITED STATES ATTORNEY*
*973-645-2515*