## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARIJAN CVJETICANIN<br><br><div align="center">Defendants.</div> | Criminal No. 14-274 (MAS)<br><br><u>Filed Electronically</u><br><br>**PRETRIAL MOTIONS** |

---

### BRIEF IN SUPPORT OF DEFENDANT MARIJAN CVJETICANIN'S PRETRIAL MOTIONS

---

Lorraine Gauli-Rufo, Esq.
130 Pompton Avenue
Verona, NJ 07044
973.239.4300

Thomas Ambrosio, Esq.
750 Valley Brook Avenue
Lyndhurst, NJ 07071
201.935.3005

*Attorneys for Defendant Marijan Cvjeticanin*

## <u>SUMMARY OF PRETRIAL MOTIONS REQUESTED</u>

1. Defendant requests disclosure of alleged statements of defendant referred to in the indictment.

2. The indictment should be dismissed because a mere failure to pay a civil obligation or the nonperformance of one's obligations under an agreement is not criminal.

3. The indictment in the instant matter contains prejudicial surplusage that is irrelevant and should be stricken.

4. Defendant requests a motion *in limine* to prohibit the government from arguing the corporate victims suffered losses other than the losses specifically mentioned in counts 1 through 12 of the indictment.

5. Defendant reserves the right to object to the authenticity of exhibits disclosed by the government and leaves the government to its proofs.

6. Defendant objects to chain of possession foundation for all exhibits the government seeks to admit into evidence at trial.

7. Federal Rules of Criminal Procedure Rule 12.4 Disclosure Statement must be filed before trial can proceed.

8. Defendant requests a hearing to determine the audibility and admissibility of all audio and video recordings in the within case.

9. The government should be compelled to preserve all rough notes, report drafts, and final reports prepared by any government agent or witness in connection with the investigation which culminated in the indictment against the defendant.

10. The government should be required to disclose to defense counsel all discovery pursuant to rule 3500 of the federal rules of evidence ten days prior to the time that the government expects the witness to testify.

11. The government should be compelled to provide defendants with final transcripts and all documentary evidence which the government intends to use at trial sixty days prior to the trial date.

12. Defendant is entitled to a preliminary hearing with respect to the admissibility of all evidence of prior crimes and/or offenses which the government intends to introduce at trial pursuant to *Federal Rule of Evidence* 404(b).

13. Defendant reserves the right to exclude relevant evidence for prejudice, confusion, waste of time, or other reasons pursuant to *Federal Rule of Evidence* 403.

14. Motion for Change of Venue pursuant to *Federal Rule of Criminal Procedure* 21.

15. The jury must be given a curative instruction in the event the government introduces evidence at trial of violations of the *Code of Federal Regulations*.

16. Defendant requests leave to file additional motions as they become appropriate.

**Preliminary Statement**

Defendant Marijan Cvjeticanin respectfully submits this brief in support of his pretrial motions. Cvjeticanin is charged as a single defendant in 12 separate counts of Mail Fraud in violation of 18 *USC* § 1341 and 18 *USC* § 2.

The superseding indictment alleges that Cvjeticanin devised a scheme and artifice to defraud two corporate victims of hundreds of thousands of dollars. The gist of the alleged scheme to defraud is that Cvjeticanin falsely represented to the corporate victims that Flowerson, a company owned or controlled by Cvjeticanin, would place job advertisements in local newspapers and/or a national magazine and on the internet. The corporate victims needed to place certain job advertisements when applying for permanent residency on behalf of foreign employees the corporate victims wanted to keep on their payrolls. The purpose of the ads was for the corporate victims to be able to prove to the United States Department of Labor that the corporate victims needed to maintain employment of an existing foreign worker because there was no minimally qualified United States citizen available to fill a foreign worker's particular position within the corporate victim's company. The indictment further alleges that Flowerson was owned and/or controlled by Cvjeticanin and that Flowerson and/or Cvjeticanin:

- never placed the ads that were represented would be placed;

- charged the corporate victims a fee for placing the ads that were never placed;

- sent fraudulent invoices by US mail to the corporate victims for the ads that were never placed;

- received payment for the unplaced ads; and

- engaged in a scheme to defraud the corporate victims by hiding the fact that he and/or Flowerson never placed the ads that the corporate victims thought had been placed.

Cvjeticanin vehemently maintains he is innocent of all wrongdoing and denies having devised a scheme and artifice to defraud any company or any person. The government is left to its proofs at trial.


## LEGAL ARGUMENT

## POINT 1

**DEFENDANT REQUESTS DISCLOSURE OF ALLEGED STATEMENTS OF DEFENDANT REFERRED TO IN THE INDICTMENT.**

Paragraph 15 of the indictment alleges that "It was further a part of the scheme to defraud that CVJETICANIN falsely **informed other persons** (emphasis added) at Law Firm A that he had placed the required advertisements "knowing such false information would be submitted to the DOL and USCIS in connection with labor certifications and permanent residency applications, including in response to audits conducted by DOL." The indictment does not allege whether the false Cvjeticanin representations were oral, written or both oral and written.

The above indictment language clearly indicates that the government claims that Cvjeticanin made false statements in furtherance of mail fraud to a least *two* people. *Fed. R. Crim. P.* 16 requires the government to disclose the following:

> (A) Defendant's Oral Statement. Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

4

(B) Defendant's Written or Recorded Statement. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

(i) any relevant written or recorded statement by the defendant if:

• statement is within the government's possession, custody, or control; and
• the attorney for the government knows—or through due diligence could know—that the statement exists;

(ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and

(iii) the defendant's recorded testimony before a grand jury relating to the charged offense.

As of the filing date of these pretrial motions Cvjeticanin has been provided with alleged statements he made to Steven Weinberg, a partner at what the indictment refers to as "Law Firm A". These statements are in the form of audio and video recordings.

The government should be ordered to provide any other written or recorded statements made by Cvjeticanin (whether such statements were made to Steven Weinberg or another person in Law Firm A.)  or be precluded from introducing them into evidence, in the event that the government does not disclose the existence of alleged reordered, written or oral statements made by Cvjeticanin to persons other than Steven Weinberg then ¶ 15 of the indictment would need to be amended to reflect that "Cvjeticanin falsely informed *a person* (emphasis added) at Law Firm A that he had placed the required advertisements…"

Furthermore, if it turns out that the government does not disclose alleged statements made by Cvjeticanin to persons at Law Firm A other than Steven Weinberg in furtherance of

5

mail fraud then the government should be precluded from arguing that Cvjeticanin made statements in furtherance of mail fraud to anyone at Law Firm A other than Steven Weinberg. Allowing the government to argue otherwise would be highly prejudicial and would deprive Cvjeticanin of a fair trial.

## POINT 2

**THE INDICTMENT SHOULD BE DISMISSED BECAUSE A MERE FAILURE TO PAY A CIVIL OBLIGATION OR THE NONPERFORMANCE OF ONE'S OBLIGATIONS UNDER AN AGREEMENT, IS NOT CRIMINAL.**

An issue that is dispositive of this indictment, concerns the government's attempts to criminalize what is, at most, a civil dispute. The crux of the allegations against Cvjeticanin in this case is that he did not place ads for employment positions that were supposed to be placed. See Ind. ¶¶ 12 – 17.

Cvjeticanin argues that as a matter of law, the breach of a civil contractual obligation does not rise to the level of criminal mail fraud and, therefore, the indictment must be dismissed.

It is well established that a breach of contract, or the failure to fulfill a civil obligation, is not a crime. *See, e.g.*, *United States v. D'Amato*, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994). After all, to infer "fraudulent intent from mere nonperformance" would "eviscerate the distinction between a breach of contract and fraud."[1] And, "[m]isrepresentations amounting only to a

---

[1] *See also McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990) (a breach of contract in itself does not constitute a scheme to defraud); *Soper v. Simmons Int'l, Ltd.*, 632 F. Supp. 244, 249 (S.D.N.Y. 1986) (Sand, J.) (mere failure to perform an obligation or promise does not constitute fraud); *People v. Foster*, 73 N.Y.2d 596, 603-04, 543 N.Y.S.2d 1, 4 (1989)(not all acts that are wrongful in a civil context constitute criminal conduct).

deceit are insufficient to maintain a mail or wire fraud prosecution." *D'Amato*, 39 F.3d at 1257, *quoting United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987). Rather, failure to comply with a contractual obligation is only fraudulent when the promisor never intended to honor the contract.

Here, Cvjeticanin had every intention to honor the contract between Flowerson and Company A and Company B. Implicit in the contracts between Flowerson and Company A and Company B was the understanding that Company A and Company B needed certain advertisements for employment placed in order to be able to retain their respective foreign employees. The ultimate purpose of and an underlying reason for the contracts between Flowerson and Companies A and B was to ensure that Companies A and B were able to keep their foreign employees. In the end, Companies A and B were able to retain most of their foreign employees for whom Flowerson placed required job advertisements. Flowerson substantially complied with its contractual obligations it had with Companies A and B. Any non-compliance is the sort of non-compliance that routinely occurs in civil contracts.

The right to contract forms the very foundation of our system of law. Records of contracts date all the way back to the Norman Conquest, when recovery for the breach of a promise could be obtained in an action of covenant or in "assumpsit."[2] The sanctity of a contract achieves paramount consideration in our courts as it is the force that drives our economy.

---

[2] Williamson M. Evers, *Toward a Reformulation of the Law of Contracts, Journal of Libertarian Studies*, Vol. 1, No. 1, p.3, Pergamon Press (Great Britain).

Since the parties to a contractual dispute are left to their customary civil remedies, this case presents critical questions relating to the imposition of criminal liability on a defendant whose conduct is civil in nature. Cvjeticanin should not be relegated to a criminal prosecution, particularly where Flowerson substantially complied with its contractual obligations and Companies A and B got the ultimate benefit of their contract with Flowerson, *i.e.*, the retention of their foreign employees. If Companies A and B had chosen to sue Flowerson in a civil action to recover all monies paid to Flowerson for advertising then Flowerson would have had a host of civil defenses as to why no refund would be due the companies, *e.g.*, *quantum meruit*, substantial completion, accord and satisfaction, unclean hands on the part of the Companies A and B. In short, Flowerson did provide quantifiable and beneficial services to Companies A and B. Flowerson and Companies A and B also had a long established course of business. Cvjeticanin did not commit a crime.

To permit a criminal prosecution in a civil dispute over a breach of contract could have other serious consequences and would make persons facing civil claims vulnerable to unwarranted criminal liability. The unchecked expansion of federal penal statutes as a means of prosecuting people who, at most, may have breached a civil contract, has been a matter of considerable concern to our courts, the bar and scholarly commentators.[3]

---

[3] Prominent members of the Second Circuit have expressed their grave misgivings over the misuse of the federal fraud statute by prosecutors. *See United States v. Margiotta*, 688 F.2d 108, 143 (2d Cir. 1982), *overruled on other grounds*, *United States v. McNally*, 483 U.S. 350, 107 S. Ct. 2875, 97 (1987)(Winter, J., concurring and dissenting)(finding troubling the potential for abuse because of the raw political power the mail fraud statute affords federal prosecutors to prosecute selectively). A stream of scholarship has also expressed concern over abuse of the mail fraud statute by prosecutors to prosecute matters that should be civil and not criminal. John C. Coffee, Jr., *From Tort to Crime: Some Reflections on the Criminalization of Fiduciary*

Finally, making a criminal case out of what, at most, is a civil suit implicates grave jurisdictional issues. This is particularly true in light of the substantially higher burden of proof in a criminal case. Therefore, we urge that a proper disposition should be dismissal of the indictment and allowing the parties to pursue their claims in a proper civil forum. Moreover, because this prosecution denies Cvjeticanin his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, the indictment should be dismissed.

## POINT 3

**THE INDICTMENT IN THE INSTANT MATTER CONTAINS PREJUDICAL SURPLUSAGE THAT IS IRRELEVANT AND SHOULD BE STRICKEN.**

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." *Fed. R. Crim. P.* 7(c)(1). To be sure, the government cannot elect to include information that is not essential to the offense charged if such information is prejudicial to a defendant. *Fed. R. Crim. P.* 7(d) accordingly provides: "Upon the defendant's motion, the court may strike surplusage from the indictment or information." *Fed. R. Crim. P.* 7(d).

The purpose of *Rule* 7(d) is to protect a defendant against prejudicial allegations, notations or items that are neither relevant nor material to the charges made in the indictment. *United States v. Alsugair*, 256 F. Supp. 2d 306, 317 (D.N.J. 2003); 1 *Wright, Federal Practice and Procedure* §127 at 277 (2010). It "introduces a means of protecting the defendant against

---

*Breaches and the Problematic Line Between Law and Ethics*, 19 Am. Crim. L. Rev. 117, 126 n.47 (1981)(criticizing federal enforcement of breach of fiduciary duty on grounds of over-criminalization).

Case 3:14-cr-00274-MAS Document 43 Filed 05/08/15 Page 11 of 32 PageID: 121

immaterial or irrelevant allegations in an indictment which may, however, be prejudicial." *Fed. R. Crim. P.* 7 Advisory Committee's Note (d); *see also United States v. McDade*, 28 F.3d 283, 301 (3d Cir. 1994) (acknowledging that language in an indictment, even though lacking any legal effect, may be prejudicial).

In light of such principles, the Third Circuit has recognized the "power of the district court to redact from an indictment . . . superfluous language which unfairly prejudices the accused." *United States v. Vastola*, 899 F.2d 211, 231 n.25 (3d Cir. 1990). Indeed, the Third Circuit has rendered it clear that a court may strike surplusage from the indictment "when it is both irrelevant (or immaterial) and prejudicial." *United States v. Hedgepeth*, 434 F.3d 609, 612-613 (3d Cir. 2006).

In *United States v. Vastola*, 670 F. Supp. 1244, 1254-1256 (D.N.J. 1987), the court held it proper to strike surplusage consisting of vague, irrelevant language that invited insinuations regarding unalleged facts. In doing so, the court acknowledged that the surplusage might be "meaningful to a jury's consideration of guilt" and thereby render any verdict potentially unsafe. *Id*. at 1254. Similarly, in *United States v. Alsugair*, 256 F. Supp. 2d 306, 317 (D.N.J. 2003), the court held it proper to strike surplusage where the language could lead the jury to think that the scope of illegality was wider than that actually charged. *See also United States v. Slay*, 673 F. Supp. 336, 347-351 (E.D. Mo. 1987) (remanding for a new trial and holding that surplusage portions of an indictment that did not relate to a criminal offense should have been struck because "permitting the jury to convict defendants for conduct not criminalized . . . is a fundamental error)"; *cf. United States v. Woods*, 877 F.2d 477, 480-481 (6th Cir. 1989) (finding that words in an indictment that accused a banker had converted funds "for his own use" were

10

surplusage because the statute required no such element, although considering the same on a motion to strike).

**The Irrelevant And Prejudicial Indictment Language**

¶ 9 of the indictment states:

"It was part of the scheme to defraud that at some point prior to January 2010, CVJETICANIN caused Law Firm A to replace its existing advertising agency with Flowerson."

As in *Slay, supra,* the language allows the jury to infer and impute that the mere act of entering into a contract amounts to criminal conduct.  Flowerson started advertising for Companies A and B well before 2010. The defendant contends that Flowerson entered into contracts with Companies A and B in order to provide Companies A and B with legal advertising services; not as part of a scheme to defraud. The government cannot point to any evidence that supports the proposition that a scheme to defraud existed when Flowerson initially began its contractual relationship with Companies A and B.  Accordingly, such language should be stricken.

¶ 10 of the indictment states:

"It was further a part of the scheme to defraud that from at least 2010 through in or about September 2012, CVJETICANIN concealed his interest in and control of Flowerson from Law Firm A, Company A, Company B, and others."

This language is irrelevant, inflammatory, and prejudicial. How did Cvjeticanin further the scheme to defraud by concealing his interest in or control of Flowerson from Law Firm A, Company A or Company B? The alleged fraud was the duping of Companies A and B to pay for ads that were never placed.

11

Cvjeticanin's amount of ownership or control in Flowerson is not dispositive of whether fraud was committed. To prove this point, assume for argument's sake that Cvjeticanin had no ownership interest in or control of Flowerson. He still could be found guilty of mail fraud if a jury believed he agreed to perpetrate the alleged fraud with others at Flowerson and he shared in the proceeds of the fraud. Or assume for argument's sake the indictment alleged that Cvjeticanin **had disclosed his interest** in or control of Flowerson to Law Firm A, Company A and Company B. The same scheme to defraud could have been carried out. Cvjeticanin having an interest in Flowerson is not a crime. It is also not a crime for Cvjeticanin to conceal his interest in or control of Flowerson.

The essence of the alleged fraud was Cvjeticanin convincing Company A and Company B to pay for ads they believed were placed, but in fact were not placed. Disclosing or not disclosing his ownership interest was in no way a component of any fraud. The jury should not be misled to think that non-disclosure of one's interest in a corporate entity is somehow illegal. As such ¶ 10 should also be stricken as surplusage in its entirety.

¶ 12 of the indictment states:

"CVJETICANIN sent over $500,000 in invoices on behalf of Flowerson to Company A and Company B in New Jersey by mail for advertising services allegedly rendered, including a combined total of approximately $206,210 for advertisements that were purportedly placed in Computer World magazine."

The dollar amounts of $500,000 and $206,210 referenced in ¶ 12 are not elements of the offense of mail fraud and only serve to inflame the passions of the jury. These dollar amounts

are highly prejudicial and must be stricken as surplusage. Failure to strike these figures from ¶ 12 of the indictment will deprive Cvjeticanin of a fair trial.

¶ 18 of the indictment states:

"It was further a part of the scheme to defraud that CVJETICANIN deposited into a checking account maintained by Flowerson at TD Bank and other related accounts payments that Company A and Company B made to Flowerson for advertisements that were never placed."

Depositing money into a bank account is not an element of mail fraud under 18 USC § 1341. The elements of mail fraud that the government needs to prove beyond a reasonable doubt are:

       1.    That someone knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations, or promises, or willfully participated in such a scheme with knowledge of its fraudulent nature, as detailed in Counts Eight through Twelve of the Indictment;

       2.    That someone acted with the intent to defraud; and

       3.    That in advancing, furthering, or carrying out the scheme, someone used the mails or a private or commercial interstate carrier, or caused the mails or a private or commercial interstate carrier to be used.

Whether Cvjeticanin put money in an account is not relevant to the government proving a case of mail fraud against him, however, this language in the indictment is highly inflammatory, unnecessary and prejudicial against him. It should be stricken.

¶ 19 of the indictment states:

"It was further a part of the scheme to defraud that CVJETICANIN disbursed funds from Flowers TD Account and other related accounts to benefit himself, his family and other entities controlled by him. Among other things, CVJETICANIN used funds obtained from Company A and Company B to finance his lifestyle and service his debts."

13

Whether Cvjeticanin actually received funds from Company A or B is not something the government needs to prove as part of the charge of mail fraud. What Cvjeticanin may have done with alleged fraudulently obtained funds is not something the government needs to prove in order to secure a conviction against Cvjeticanin for mail fraud. The language contained in ¶ 19 is highly prejudicial, inflammatory and irrelevant.  As such ¶ 19 should also be stricken as surplusage in its entirety.

### Forfeiture Allegation

Lastly, Cvjeticanin submits that the Forfeiture Allegation contained in the indictment must be modified to remove any dollar amount, stricken from the indictment or simply not read to the jury. The Forfeiture Allegation states that the government will seek forfeiture of $579,000 from Cvjeticanin in the event of a conviction. The inclusion of the specific dollar amount of $579,000 is unduly prejudicial and will deprive Cvjeticanin of a fair trial. If the jury hears that the government is seeking forfeiture of $579,000 from Cvjeticanin an immediate bias will be formed against him based simply upon the dollar amount. There is no sound reason why the jury should even hear that the government may seek forfeiture in the event of a conviction since forfeiture is a sentencing issue; it does not require any determination on the part of the jury. The jury will not be given a jury instruction in connection with the forfeiture allegation.

Thus, the $579,000 amount should be stricken form the Forfeiture Allegation of the indictment or in the alterative the jury should not be read or otherwise provided with the Forfeiture Allegation.

If all of the above referenced prejudicial language is not stricken from the indictment then the wrong inferences and improper imputations that will result from its inclusion will

14

fatally infect the jury's deliberations. A guilty verdict, should one be returned, would be defective. Accordingly, all of the cited prejudicial language should be redacted.

## POINT 4

**DEFENDANT REQUESTS A MOTION *IN LIMINE* TO PROHIBIT THE GOVERNMENT FROM ARGUING THE CORPORATE VICTIMS SUFFERED LOSSES OTHER THAN THE LOSSES SPECIFICALLY MENTIONED IN COUNTS 1 THROUGH 12 OF THE INDICTMENT.**

The defendant is charged with 12 separate counts of mail fraud. Each count makes reference to a specific invoice. Each count lists the actual dollar amount of the referenced invoice. The dollar amounts of the 12 referenced invoices range from a low of $2,770 to a high of $3,380. The sum total dollar amount of the 12 invoices is $38,282. The indictment puts Cvjeticanin on notice that he allegedly received payment for these same 12 invoices as a direct result of his committing mail fraud.

¶ 12 of the indictment alleges that "CVJETICANIN sent over $500,000 in invoices on behalf of Flowerson to Company A and Company B in New Jersey by mail for advertising services allegedly rendered, including a combined total of approximately $206,210 for advertisements that were purportedly placed in Computer World magazine" The government has the right  to argue in its prosecution that Cvjeticanin defrauded Company A and Company B of $38,282 since those figures are specifically alleged in the indictment. It should have the right to argue that Cvjeticanin defrauded Company A and Company B of either $500,000 or $206,000.

15

The government chose to make each of the 12 alleged fraudulent invoices a separate count of the indictment. The government is left to its burden of proving beyond a reasonable doubt that the elements of mail fraud exist **in each separate count**.

It would be highly prejudicial and unfair to Cvjeticanin if the government would be allowed to argue, insinuate or in any way represent that monies received by Cvjeticanin in connection with invoices not specifically mentioned in the indictment resulted in Cvjeticanin obtaining payment by fraud.

If one assumes that the $500,000 in invoices referred to in ¶ 12 were similar in dollar amount to the invoices referenced in counts 1 through 12 then one would be able to extrapolate that Flowerson sent Company A and Company B a combined total of 167 invoices (500,000/3,000 = 166.66). The government could have charged Cvjeticanin with 167 counts of fraud. For reasons known only to it, the government chose to charge Cvjeticanin with only 12 counts of fraud. That leaves approximately 155 invoices not specifically charged in the indictment. If Cvjeticanin had been indicted on 167 counts of mail fraud then for each separate count the government would have been required to prove beyond a reasonable doubt each and every element of mail fraud.

It would be extremely prejudicial for the government to be able to argue to the jury that Cvjeticanin committed mail fraud in connection with any of the approximately 155 invoices not specifically referenced in a separate count of the indictment. If the government does not submit proof to the jury that no ads were placed in connection with the 155 invoices not listed in the indictment the jury would be allowed to speculate that Flowerson did not provide services related to those invoices and that mail fraud was committed in connection with those

155 invoices. Cvjeticanin maintains that he did not commit mail fraud with any of the invoices and any dispute he and/or Flowerson has with the corporate victims is a civil matter.

Another reason to not allow the government to argue that Cvjeticanin committed mail fraud in connection with any invoice other than invoices specifically referenced in counts 1 – 12 of this indictment is the potential impact upon sentencing in the event of a partial guilty verdict. Assume Cvjeticanin is acquitted on 6 counts and found guilty on 6 counts. In that event he might argue at sentencing that the dollar amounts on the 6 counts of acquittal could not be used in determining the loss amounts for guideline calculation purposes. If defendant is convicted of any of the 12 counts then his sentencing guideline calculation will vary depending upon the amount of loss suffered by the corporate victims as set forth in U.S.S.G. § 2B1.1.

The government does not need to establish a loss amount in order to procure a conviction for mail. The government needs to merely prove intent to defraud. (*see* 18 U.S.C. § 1341) The loss amount determination for sentencing purposes is a task for the sentencing judge. The standard of proof for loss amounts is a preponderance of the evidence. Proof of loss amount can be elicited at a sentencing hearing.

It would be unduly prejudicial and serve no legitimate purpose for the government to submit evidence to the jury establishing loss amounts not specifically referenced in counts 1- 12 of the indictment. It is common sense that a jury would be much more inclined to convict a defendant accused of stealing $500,000 than to convict a defendant accused of stealing $38,282.

If dollar loss amounts are irrelevant to the jury in order to convict a defendant then what legitimate reason would there be for such loss amounts to be admitted into evidence?

Submission of loss amounts to the jury would only inflame their passions and/or confuse them. If the loss amounts are permitted to be admitted into evidence then the defendant will be denied both due process and a fair trial.

For the foregoing reasons the government should be barred from arguing that Cvjeticanin committed fraud beyond $38,282.

In the event that the court rules that the government may present evidence of loss amounts in excess of $38,282 then Cvjeticanin would request a limiting instruction be given to the jury at the time such loss amount evidence is admitted into evidence.

**POINT 5**

**DEFENDANT RESERVES THE RIGHT TO OBJECT TO THE AUTHENTICITY OF EXBHIBITS DISCLOSED BY THE GOVERNMENT AND LEAVES THE GOVERNEMENT TO ITS PROOFS**

On May 21, 2014, the Court filed an Order for Discovery and Inspection (ECF Document 21). Paragraph 7 of the Order states: "The authenticity of all exhibits disclosed to and examined by counsel pursuant to paragraph 6 of this Order shall be deemed to have been accepted by either the defendant or the United States unless counsel files with the Court, fourteen (14) days prior to the date of trial, a notice that the authenticity of one or more exhibits will be contested at trial, together with a statement delineating why the authenticity of the exhibit is being challenged together with a certification is being made in good faith."

As of the filing of this motion the government has not yet provided the defendant with a trial exhibit list. The government has provided the defendant with thousands of pages of potential exhibits in discovery. While reviewing many of the documents provided in discovery it

is not readily apparent how many of the exhibits came into the possession of the government. It is also not readily apparent how and by whom the exhibits were created. Defendant refuses to concede that any of the exhibits are authentic. It is simply not fair to ask the defendant to blindly accept the authenticity of thousands of exhibits that defendant never possessed and never knew existed.

### Many government exhibits contain impermissible and unduly prejudicial hearsay and must be redacted before being admitted into evidence.

Defendant alerts the Court to a potential evidentiary issue that has an ancillary connection to the issue of authenticity. The ongoing review of government exhibits provided in this case has revealed that many of the business records the government intends to introduce have **hand written notations,** on what would otherwise might be a business record. Additionally, many of the alleged business records have superfluous pages of entirely hand written notes.

First, defendant would argue that any hand written notes on a business record are not in fact business records pursuant Fed. R. Evid. (6). Second, unless the government lays a proper foundation and seeks to admit any exhibit which contains hand written notes under another hearsay exception, then then the exhibits which contain hand written notes should not be admitted into evidence.

Given the large volume of documents that the government seeks to introduce at trial the defendant is asking that all parties involved be diligent in not allowing inadmissible and potentially unduly prejudicial exhibits to be submitted to the jury. Defendant makes this request in an effort to ensure he receives a fair trial.

The government is left to its burden of establishing the authenticity of any exhibit it intends to enter into evidence.

Attached as "Exhibit A" to this brief is a certification from the undersigned in accordance with the requirements of the Order for Discovery and Inspection.

## POINT 6

**DEFENDANT OBJECTS TO CHAIN OF POSSESSION FOUNDATION FOR ALL EXHIBITS THE GOVERNMENT SEEKS TO ADMIT INTO EVIDENCE AT TRIAL.**

Paragraph 8 of the Order for Discovery and Inspection referenced in the previous Point states: "When counsel has examined an exhibit disclosed prior to trial pursuant to the provisions of paragraph 6 of this Order, the chain of possession of the exhibit will be deemed to have been accepted by either the defendant or the United States unless counsel files with the Court,  fourteen (14) days prior to the date of trial, a notice that the chain of possession of the exhibit will be contested at trial, together with a statement delineating why the authenticity of the exhibit is being challenged together with a certification that the chain of possession of the exhibit is being made in good faith."

As of the filing of this motion the government has not yet provided the defendant with a trial exhibit list. The government has provided the defendant with thousands of pages of exhibits in discovery. While reviewing many of the exhibits provided in discovery it is not readily apparent how most of the exhibits came into the possession of the government. Defendant refuses to blindly accept a chain of possession for any of the proposed government exhibits. It is simply not fair to ask the defendant to blindly accept the chain of possession of thousands of

exhibits that defendant never possessed, never knew existed and never knew the whereabouts of such exhibits after such exhibits entered into the custody of the government. The government is left to its burden of establishing a proper chain of possession for all exhibits it intends to offer into evidence.

Attached as "Exhibit A" to this brief is a certification from the undersigned in accordance with the requirements of the Order.

## POINT 7

**FEDERAL RULE OF CRIMINAL PROCEDURE 12.4 DISCLOSURE STATEMENT HAS NOT BEEN FILED.**

The government has not complied with the disclosure requirement under Fed. R. Crim. Pro. 12.4. There are 2 corporate victims mentioned in the indictment, Company A and Company B.

The main purpose of this rule is to ensure the Court does not have a conflict of interest as result of having an ownership interest in the corporate victim. Until this notice is filed the defendant cannot be tried.

## POINT 8

**DEFENDANT REQUESTS A HEARING TO DETERMINE THE AUDIBILITY AND ADMISSIBILITY OF ALL AUDIO AND VIDEO RECORDINGS OFFERED INTO EVIDENCE BY THE GOVERNMENT.**

Defendant requests a hearing to determine the audibility and admissibility of the audio and video recordings it intends to introduce at trial and demands that the government be ordered to prove the chain of custody and authenticity of all evidence sought to be introduced. Furthermore, the defendant must be given the opportunity to challenge any transcriptions

made by the government to determine whether the government's transcription is accurate. Our courts have held that "the burden is on the government to provide clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings, *United States v. Starks*, 515 F. 2d 112, 121 (3rd Cir. 1975); *quoting*, *United States v. Knoh*, 379 F. 2d 427, 440 (2d Cir. 1967) "and the better rule requires [the party offering the tape recording] to prove its chain of custody."  *Starks*, at 122.

In this regard, before a tape recording will be admitted into evidence it is incumbent upon the government to establish a foundation showing the following facts:

(1)     That the recording device was capable of taping the conversation now offered in evidence.

(2)     That the operator of the device was competent to operate the device.

(3)     That the recording is authentic and correct.

(4)     That changes, additions, or deletions have not been made in the recording.

(5)     That the recording has been preserved in a manner that is shown to the court.

(6)     That the speakers are identified.

(7)     Conversation elicited was not made due to inducement.

*Starks*, at 121; *citing United States. v. McKeever*, 168 F. Supp. 426, 430 (S.D.N.Y. 1958).

In light of the foregoing, defendant requests a hearing to determine the admissibility and authenticity of the government's taped recordings.

**POINT 9**

**THE GOVERNMENT SHOULD BE COMPELLED TO PRESERVE ALL ROUGH NOTES, REPORT DRAFTS, AND FINAL REPORTS PREPARED BY ANY GOVERNMENT AGENT OR WITNESS IN CONNECTION WITH THE INVESTIGATION WHICH CULMINATED IN THE INDICTMENT AGAINST THE**.

The defendant requests that the Court order the government to preserve all rough notes, and reports that were prepared by government agents or witnesses in connection with the investigation which culminated in the indictment against the defendant.

In *United States v. Vella*, 562 F.2d 275 (3rd Cir. 1977), the Court held the following;

> [T]he rough interview notes of F.B.I. agents should be kept and produced so that the trial court can determine whether the notes should be made available to the appellant under the rule of *Brady v. Maryland*, 373 U.S. 83, (1963).

*Vella* at 275.

The government is under an obligation to preserve and set aside rough notes and drafts of reports.  The failure, on the part of the government to preserve this evidence may in some instances constitute grounds for reversal.  *United States v. Testamark*, 570 F.2d 1162, 1165 (3rd Cir. 1978).

It is therefore respectfully requested that the government be instructed to preserve all rough notes, report drafts, and final reports that were prepared by government agents or witnesses in connection with the investigation which culminated in the indictment against the defendant.

## POINT 10

**THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE TO DEFENSE COUNSEL ALL DISCOVERY PURSUANT TO RULE 3500 OF THE FEDERAL RULES OF EVIDENCE TEN DAYS PRIOR TO THE TIME THAT THE GOVERNMENT EXPECTS THE WITNESSES TO TESTIFY.**

In order to expedite the trial and avoid unnecessary delays and interruptions regarding which materials fall within the purview of the *Jencks Act*, Defendant requests that the Court order the Government to turn over *Jencks Act* material relating to a particular witness at least ten days before that witness is scheduled to testify.  Providing these materials to the defense will not prejudice the Government, and it will aid defendant and his counsel in preparing for trial in a thorough and competent manner.  It will also expedite the trial since cross-examination can be, to a large extent, prepared in advance of trial.

Defendant further requests that any *Jencks* or impeachment materials relating to any person be turned over immediately.

## POINT 11

**THE GOVERNMENT SHOULD BE COMPELLED TO PROVIDE DEFENDANTS WITH THE FINAL TRANSCRIPTS AND ALL DOCUMENTARY EVIDENCE THAT THE GOVENRMENT INTENDS TO USE AT TRIAL SIXTY DAYS PRIOR TO THE TRIAL DATE.**

There are numerous recorded conversations in this case. To date, the defendant has not received any transcripts.  In all fairness to the defendant, the government should be required to produce all the aforementioned documentary evidence which it intends to use at trial sixty days before the trial date.  In so doing, the defendant will have an adequate opportunity to prepare for this trial.

24

**POINT 12**

**DEFENDANT IS ENTITLED TO A PREMLINARY HEARING WITH RESPECT TO THE ADMINISSABILITY OF ALL EVIDENCE OF PRIOR CRIME, WRONGS OR OTHER ACTS WHICH THE GOVERNMENT INTENDS TO INTRODUCE AT TRIAL.**

Pursuant to *Federal Rules of Evidence* 404(b) defendant is entitled to a preliminary hearing with respect to the admissibility of all evidence of prior crimes, wrongs or other acts which the government intends to introduce at trial against him.  This is necessary in order to allow the defendant to adequately prepare a defense and be in a position to effectively confront this evidence.  *See, United States v. Baum*, 482 F. 2d 1325, 1332 (2d Cir. 1973) (The production of this type of evidence is required to give the defendant "a fair opportunity to meet the critical and damaging proof of an offense not presented against him in the indictment.")

The admission of this type of evidence at the time of trial without a preliminary hearing certainly will not give the defendant a "fair opportunity" to challenge the proffered evidence. In *Baum*, the Court reversed the defendant's conviction and a new trial was ordered because the defendant was not given an adequate opportunity to rebut the evidence.   "Confronted for the first time with the accusation of prior criminal conduct and the identity of the accuser, the defendant had little or no opportunity to meet the impact of his attack in the midst of the trial. The precarious predicament was precipitated by the prosecutor."  *Id,* at 1331.  See also *United States v. Flecha*, 442 F. Supp. 1044, 1046 (E.D. Pa 1977), *aff'd without op*., 577 F.2d 729 (3rd Cir. 1978); *Riggs v. United States*, 280 F.2d 750, 753 (5th Cir. 1960) *United States v. Kelly*, 420 F.2d 26, 29 (2nd Dir. 1969); *United States v. Lehowitz*, 669 F.2d 894, 901 (3rd Cir.); *cert. denied*, 456 U.S. 929 (1982), 454 U.S. (1982); Huddleson v. United States, 485 U.S. 681 (1988).

**POINT 13**

**DEFENDANT RESERVES THE RIGHT TO EXCLUDE RELEVANT EVIDENCE FOR PREJUDICE, CONFUSION, WASTE OF TIME OR OTHER REASONS PURSUANT TO FEDERAL RULE OF EVIDENCE 403.**

*Federal Rules of Evidence* 403 provides:

> "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Defendant cannot predict all of the evidence that the government may attempt to admit into evidence against him, therefore, he is unable to make cogent Rule 403 motions at this time. He reserves the right to make such motions after receipt of the government's exhibit list and/or during the course of the trial.

**POINT 14**

**DEFENDANT REQUESTS A CHANGE OF VENUE PURSUANT TO FED. R. CRIM. P. 21.**

Cvjeticanin is requesting that this case be transferred to the Southern District of New York for trial pursuant to *Fed. R. Crim. P.* 21.  The Supreme Court has furnished a list of ten factors to guide lower courts in the exercising of discretion in evaluating motions under Rule 21(b):[4]

1) location of the corporate defendant

---

[4] *Platt v. Minnesota Mining and Manufacturing Co*., 376 U.S. 240, 243–44, 884 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964).

2) location of possible witnesses;

3) location of events likely to be in issue;

4) location of documents and records likely to be involved;

5) disruption of defendant's business unless the case is transferred;

6) expense to the parties;

7) location of counsel;

8) relative accessibility of place of trial;

9) docket condition of each district or division involved; and,

10) any other special elements which might affect the transfer.

When one reviews the underlying facts of this case and applies those facts to the above factors it becomes clear that it is a case based in New York City and as such should be venued in the Southern District of New York.

The corporate defendants while having offices in New Jersey have major presences in New York City (factor 1). Many of the possible witnesses are located in New York City (factor 2). The location of events likely to be in issue are exclusively in New York City (factor 3). The location of documents and records likely to be involved are exclusively in New York (factor 4). The disruption of defendant's business unless the case is transferred will be a certainty. Cvjeticanin is a solo practicing attorney. The venue of this case in Trenton New Jersey has already caused a disruption to his business since he had had to travel to the New Jersey for court appearances and meeting with counsel (factor 5). The expense to the parties of having to travel to Trenton New Jersey is undeniable. The majority of witnesses for the government and

the defendant are unnecessarily forced to incur travel and possible lodging expenses if this case is tried in Trenton (factor 6) (factor 8).

Cvjeticanin requests that the Court exercise its discretion and transfer this matter to the Southern District of New York, based upon the foregoing reasons.

<div align="center">**POINT 15**</div>

**THE JURY MUST BE GIVEN A CURATIVE INSTRUTION IN THE EVENT THE GOVERNMENT INTRODUCES EVIDENCE AT TRIAL OF VIOLATIONS OF CODE OF FEDERAL REGULATIONS.**

Based upon the review of discovery in this case it is anticipated that the government shall elicit testimony from some of its witnesses that Cvjeticanin either caused or was instrumental in causing violations of the *Code of Federal Regulations* § 656 *et seq.*, *Labor Certification Process For Permanent Employment Of Aliens In The United States*.

Violating the *C.F.R.* is a crime or offense separate and apart of mail fraud, however, the jury can easily be misled that a violation of any of the provisions of *C.F.R.* § 656 *et seq.* would impose criminal liability upon Cvjeticanin for mail fraud. This is especially true since ETA Form 9089, one of the Labor Certification Process forms that the government will most likely attempt to introduce at trial contains the following language:

"I hereby certify that I have prepared this application at the direct request of the employer listed in Section C and that to the best of my knowledge the information contained herein is true and correct. I understand that to knowingly furnishing false information in the preparation of this form and any supplement thereto or aid, abet, or counsel another to do so is a federal offense punishable by a fine, imprisonment up to five years for both under 18 U.S.C. §§ 2 and 1001. Other penalties may apply as well to four or misuse of ETA immigration documents and to perjury with respect to such documents under 18 U.S.C. §§ 1546 and 1621."

<div align="center">28</div>

This certification language is contained in the forms that exist for each of the foreign job applicants referenced in each of the 12 counts of the indictment. These forms were all signed by Steven Weinberg, a partner in Law Firm A. Law Firm A is referenced in ¶¶ 1, 5, 6, 9, and 15 of the indictment. None of these forms were signed by Cvjeticanin. The certification language contained in the forms is unequivocal; the signer of the certification is subject to criminal prosecution and faces up to **five years of imprisonment** for knowingly providing false information in connection with the preparation of the form.

Defendant first argues that the forms cannot be admitted because it runs afoul of *Federal Rules of Evidence* 404(b). Admission of the forms would be evidence of a crime. The forms in question are **not relevant** to the government's ability to prove mail fraud.

In the event the Court deems the forms relevant, the forms should not be admitted into evidence since their probative value clearly would be outweighed by the prejudice of the forms being admitted.

If the Court determines the forms are admissible then a curative or limiting instruction after the introduction of the forms into evidence would be required. Without a limiting instruction there would be a grave risk that a jury would convict Cvjeticanin based on the jury's belief that because Cvjeticanin violated the regulatory provisions of *C.F.R.* § 656 he is necessarily guilty of mail fraud.

Cvjeticanin submits the following proposed limiting instruction should be given to the jury immediately after the forms are admitted into evidence:

"Members of the jury, you just heard testimony concerning the Code of Federal Regulations which make it a crime for a person to knowingly furnish false information in the preparation of ETA Form 9089 and any supplement thereto or aid, abet, or counsel another to

do so. The government in this case has not alleged that the defendant signed the form in question. The defendant has not been charged with a crime in connection with proving false information in the preparation of the form. Normally, such evidence is not permitted under our rules of evidence. The rules of evidence rules specifically exclude evidence that a defendant has committed other crimes, wrongs, or acts when it is offered only to show that he has a disposition or tendency to do wrong and therefore must be guilty of the charged offenses. Before you can give any weight to this evidence, you must be satisfied that the defendant committed the other [crime, wrong, or act]. If you are not so satisfied, you may not consider it for any purpose. However, our rules do permit evidence of other crimes, wrongs, or acts when the evidence is used for certain specific, narrow purposes…"

The remainder of the proposed charge would have to be drafted so as to comport with the government's argument as to why evidence of the forms should be admitted.

## POINT 16

**DEFENDANT REQUESTS LEAVE TO FILE ADDITIONAL MOTIONS AS THEY BECOME APPROPRIATE.**

Cvjeticanin reserves the right to file additional motions not currently contemplated that may arise due to discovery not yet provided or other arising legal issues. Defense counsel maintains that the sheer volume of discovery in this case make it likely that a new issue may arise during the ongoing review of discovery and preparation for trial. Defendant should not be penalized for timely raising any hidden trial issues.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Cvjeticanin respectfully requests that the Court enter an Order granting the pre-trial motions herein.

Respectfully submitted,

**LORRAINE GAULI-RUFO, ESQ.**
**THOMAS AMBROSIO, ESQ.**
Attorneys for Defendant Cvjeticanin

_/s/ Lorraine Gauli-Rufo_
 LORRAINE GAULI-RUFO

_/s/ Thomas Ambrosio_
 THOMAS AMBROSIO

Dated: May 8, 2015