**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br><br>     v.<br><br>MARIJAN CVJETICANIN<br><br>                      Defendants. | Criminal No. 14-274 (MAS)<br><br><u>Filed Electronically</u><br><br>**MOTION FOR NEW TRIAL PURSUANT TO**<br>**RULE 29  and RULE 33** |

---

**BRIEF IN SUPPORT OF DEFENDANT MARIJAN CVJETICANIN'S MOTION FOR NEW TRIAL**

---

Lorraine Gauli-Rufo, Esq.
130 Pompton Avenue
Verona, NJ 07044
973.239.4300

Thomas Ambrosio, Esq.
750 Valley Brook Avenue
Lyndhurst, NJ 07071
201.935.3005

*Attorneys for Defendant Marijan Cvjeticanin*

## Basis for New Trial

Defendant, Marijan Cvjeticanin, is entitled to a new trial because of improper trial evidence handling procedures, coupled with representations made to the jury in Defense Counsel's closing arguments likely caused the jury to believe Defense Counsel lied in closing arguments and therefore, led the jury to unfairly believe the Defendant was guilty because his attorney lied. These actions resulted in Defendant being deprived of his Constitutional Rights to Due Process. This argument is set forth more fully below.

## Procedural History

Defendant, Marijan Cvjeticanin, was tried before a jury in the above-captioned, nine count, mail-fraud Indictment. Jury selection in the case began and concluded on June 22, 2015. The trial immediately commenced after jury selection. Jury instructions and closing arguments were given to the jury on June 29, 2015. Prior to the jury commencing deliberations, the Court failed to recount the agreement between the Government and Defense Counsel, and to assure a proper accounting of evidence. The record does not reveal what evidence, if any, the jury had in its possession during its deliberations.

The Government in its closing arguments set forth two separate theories of why Defendant was guilty of mail fraud. The first theory was that Defendant invoiced the corporate victims and received payments for Computer World advertisements that were never placed by Defendant. The second theory of fraud was that Defendant invoiced the corporate victims and received payment for Sunday newspaper advertisements that were not placed and/or were fraudulently placed. The Jury Verdict Form did not request the jury to indicate which theory or theories upon which it based its finding of guilt.

After three hours of deliberation the jury rendered a guilty verdict against the Defendant on all nine counts of the indictment.

## Statement of Facts

During Defense Counsel's closing arguments certain representations were made to the jury about the existence of documents critical to Defendant's mail fraud defense. In the presentation of its case at trial the Government alleged that Defendant defrauded corporate victims when the Defendant sent invoices to the corporate victims for advertisements that were never placed. The Government further alleged that the Defendant profited from his scheme to defraud because he kept money that should have been used to pay for advertisements.

Defense Counsel represented to the jury during closing arguments that, contrary to the Government's assertions, the Defendant actually paid for and placed advertisements on behalf of the corporate victims, thus negating a major allegation made by the Government. More importantly, Defense Counsel represented to the jury in closing arguments that the advertisements paid for by the Defendant were contained in the Government's own exhibits. Defense Counsel went so far as to display a chart to the jury, during closing arguments. The chart listed the specific Government Exhibit and page number where each advertisement placed by the Defendant could be found. Prior to the Defendant's closing arguments the jury was completely unaware of the existence of the advertisements Defendant had actually paid for and placed in various Sunday newspapers. The jury was unaware of the existence of these advertisements because, for tactical defense reasons, the advertisements referenced in Defense Counsel's closing arguments were not published to the jury during any defense cross examinations. The advertisements were not published during the Defendant's case because the Defendant called no witnesses. The Government did not publish any of the advertisements referenced in Defense Counsel's closing arguments.

A pertinent part of Defense Counsel's closing arguments concerning the existence of advertisements placed by Defendant begins on Page 73 of the June 29, 2015 Trial Transcripts and read as follows:

"                                              Page 73

2

22    What I'm submitting to you is, that was Marijan's
23    desire to be perfect in his dealings with ADP and with Wildes
24    and Weinberg. But, what the Government didn't tell you is
25    that if you look -- if you look at the counts of the

Page 74

1    indictment, and you go through these papers, I just put them
2    down in here, like Count 1, you're going to find an ad for
3    12/19/2010, Government Exhibit 74, Section 10, Page 3.    Count
4    1, there's going to be an ad from Wildes and Weinberg -- from
5    Flowerson Holdings on 1/16/11, that's going to be Government
6    Exhibit 78, Section 10, Page 8.        You don't need to memorize
7    these because all you need to do to verify what I'm saying is,
8    ladies and gentlemen, with the four counts of the indictment
9    that deal with the audit files, go to the 9089, find out what
10    are the two dates of publication, what the publication is --
11    is it the Star Ledger or the Seattle Times, look at the
12    classified sections and look for an ad that was written by
13    Flowerson Holdings, it's got hiringinfo@aol.com, you're going
14    to find an ad, and it's most likely going to be a computer ad.
15    What I submit to you is that, that ad was not perfect.
16    And why am I bringing this up?        Because the fact that
17    there is an ad in the newspaper on the date in question, the
18    date that is on the 9089, shows that Flowerson and Marijan
19    paid for an ad, they paid for an ad that was wrong.   There was
20    no intent to defraud.   The Government's theory is you make
21    money because you don't put the ad in, and you keep the money
22    in your pocket.        But in this scenario, they put the ad in.        It
23    doesn't make sense that you would spend money on an ad that is
24    incorrect and waste your money."

Ultimately, based upon the reasons set forth below, the jury unfairly convicted the Defendant on all nine counts of mail fraud without having had the opportunity to view the advertisements which Defense Counsel vigorously asserted in closing arguments existed and which Defense Counsel argued served as one of the main reasons Defendant was not guilty of mail fraud.

The Court excused the jury from the Courtroom to begin deliberations at 12:07 p.m.[1] at 1:37 p.m. the jury issued the first of four Jury Communications.[2]   At 2:07 p.m. the Court placed

[1] June 29, 2015 Trial Transcript page 86, line 8
[2] *See* Jury Communication #1, attached hereto as Exhibit A.

on the record the contents of Communication #1 which read "Need newspapers for counts 1 and 5."[3] The placing on the record of the contents of Jury Communication #1 was a full 40 minutes after the jury wrote Jury Communication #1. During the on the record colloquy, the Government and Defense Counsel agreed, with the Court's approval, that the newspapers for count 1 and 5, as well as all the other newspapers admitted into evidence during trial, but not yet given to the jury, should be given to the jury for use in its deliberations. The colloquy in connection with Jury Communication #1 ended at 2:11 p.m.[4] At 2:39 p.m., Jury Communication # 2 was communicated by the jury.[5] At 2:42 p.m. the contents of Jury Communication # 2 was placed on the record by the Court, "The Court has received what's marked as jury communication number 10, however, it's really jury communication number 2, but apparently they feel like its number 10. Their note says, quote, 'what is going on, question mark. We have been waiting for over an hour, exclamation point' So, apparently, you have a very anxious jury."[6] That colloquy ended at 2:45 p.m.[7] At 2:57 p.m. the jury sent Jury Communication # 3 which was placed on the record at 3:09 p.m. which read simply "We have a verdict."[8] This communication was sent before the jury actually received the evidence it had requested in Jury Communication #1, which request had been made almost 2 hours prior to the verdict. It is clear from the record that the jury did not receive the evidence it requested two hours earlier, because the specific evidence requested had been removed by the Government from the Courtroom.    As Francisco Navarro, AUSA, explained:

> 8     No, your Honor. The -- so here's what
> 9     we have. We have all the documents here, all the newspapers
> 10    for all counts except for one newspaper that we are getting
> 11    from the U.S. Attorney's Office. I think it was inadvertently
> 12     taken back there. So minus that one newspaper, we have
> 13     everything.
>
> 16    It was Count 5, Judge. It's that one
> 17    newspaper that we were missing relates to Count 5, of course.[9]

---

[3] June 29, 2015 Trial Transcript, page 86, lines 17-20
[4] June 29, 2015 Trial Transcript, page 88, lines 3-9
[5] *See* Jury Communication #2 (labeled Jury Communication # 10), attached hereto as Exhibit B.
[6] June 29, 2015 Trial Transcript, page 88, line 17-20
[7] June 29, 2015 Trial Transcript, page 89, line 17
[8] *See* Jury Communication #3, attached hereto as Exhibit C.
[9] June 29, 2015 Trial Transcript, page 90, line

The jury clearly reached a verdict prior to having been given evidence it had requested to review. The Court attempted to remedy any issue with a verdict having been rendered when as in this case, the jury was not provided with evidence it specifically requested and which had not been sent into the jury room. The Court ruled:

"                                        Page 90
18    Okay.  In an abundance of caution, I
19    think it's appropriate that we make sure they have that.        Even
20    though they say they have a verdict, there's nothing that
21    requires us to do that. I think it's only appropriate just so
22    that they make sure what they requested initially has no
23    bearing whatsoever on their verdict.  And I think it's the
24    appropriate thing to do.        So I'm going to go ahead and let
25    them at least peruse through that document, and then once

                                        Page 91

1     they've looked at whatever that document is, they can advise
2     the Court if they have a verdict at that time.
                                        Page 92
9     So I think that what I'm going and what
10    I'm inclined to do, is as soon as you have that newspaper, or
11    whatever it is that you are waiting for, all that go down
12    together to the jury and then let them decide what they want
13    to do with it.   I'm not sending any instruction whatsoever,
14    but just to say that this is in response to your first jury
15    communication.        And then they may very well say, Okay, Judge,
16    thank you, but we have a verdict.

At 3:35 p.m., Jury Communication #4 was sent to the Court, which provided in very large letters, "We have a Verdict!"[10] At 3:44 p.m. the jury was brought back to the Courtroom and the verdict received.[11]

Prior to the requested evidence being provided to the jury, the jury was not instructed by a note, nor was it brought out into open Court to be instructed as to how it was to handle the failure to receive the evidence it had requested in Jury Communication #1.

---

[10] Jury Communication #4, attached hereto as Exhibit D.
[11] June 29, 2015 Trial Transcript, page 93, line 2

## Legal Argument

### A.    The Interests of Justice Require the Granting of a New Trial

Under Federal Rule of Criminal Procedure 33, "[u]pon the Defendant's motion, the Court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Proc. 33. The Court can order a new trial where it believes "that a miscarriage of justice has occurred." *United States v. Brennan,* 326 F.3d 176, 189 (3d Cir.2003). The decision to grant a new trial is within the sound discretion of the district Court. *U.S. v. Quiles*, 618 F.3d 383 (3d Cir. 2010).  In considering a Rule 33 motion, Courts should not consider evidence in the light most favorable to the Government, in stark contrast to the standard for a Rule 29 Motion. "[R]ather, on a Rule 33 motion, the Court exercises its own judgment in assessing the Government's case" to determine whether a judgment of conviction constitutes a manifest injustice in light of the evidence admitted at trial. *See United States v. Johnson,* 302 F.3d 139, 150 (3d Cir.2002); *see also Brennan,* 326 F.3d at 189.

The Due Process Clause of the Fourteenth Amendment, together with the Compulsory Process or Confrontation clauses of the Sixth Amendment, guarantee criminal Defendants "a meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  The *Crane* Court held:

> We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard.  (citations omitted). That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the Defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a Defendant of the basic right to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing.

*Crane* at 691 (*citing, United States v. Cronic*, 466 U.S. 648, 656 (1984)). *See also Washington v. Texas*, 388 U.S. 14, 23 (1967).

The *Crane* holding is applicable to the current case because "reliable" evidence bearing directly on the Defendant's claim of innocence was excluded. The newspapers that were requested by the jury and never provided to it were central to the Defendant's claim of innocence.  That evidence established that newspaper advertisements were placed and thus controverted the Government's assertion that no newspaper advertisements were placed.  As a result, Defendant was deprived of this basic right to test the Government's theory and assertion during trial, and his Due Process rights were violated.

Here, a new trial is mandated because a manifest injustice occurred during the trial and denied the Defendant a fair trial that he is guaranteed under the Due Process Clause of the Fifth Amendment. The fundamental fairness of a trial is undermined where the jury is unable to receive and review admitted evidence that is vital to Defendant's defense. Particularly in a case, such as this, where that evidence is admitted without being published.  The newspaper advertisements were admitted into evidence *via* a stipulation by the parties, and no specific portion of the newspapers was published at any time to the jury by the Government.

The materiality of this evidence to the defense was established when in closing arguments Defense Counsel clearly implored the jury to review the advertisements, and directed it to the specific locations in the Government's evidence to the newspapers relevant to the counts in the Indictment.  Perhaps even more telling of the importance of this evidence for the defense, is the jury's specific demand on two separate occasions to view this evidence.  The requested evidence was not provided to the jury because of several issues that prevented the evidence from being sent back to them.  Not only was the evidence not in any organized order relevant to the Counts of the Indictment that each newspaper pertained to, but the Government had removed at least one newspaper that had been admitted into evidence from the Courtroom.  This removed evidence was one of the requested newspapers requested by jury. Together, these actions by the Government prevented the Court from providing the jury with the requested evidence in an

expeditious and timely matter.  In fact, two hours after its initial request for newspapers relevant to two Counts of the Indictment, the evidence had not been sent back to the jury.

In the present case, the newspapers advertisements that were requested to go into the jury were contained in many bankers boxes (perhaps 10 or more) in a disorganized and haphazard fashion; they were not complete (several newspapers were missing); and, they were not contained in boxes relevant to each count of the Indictment.  Following the initial request in Jury Communication #1, the Government attorneys, together with two paralegals, the case agent, one defense attorney and the defense investigator all attempted to retrieve the documents that were responsive to jury's request in Jury Communication #1 (which demand was reiterated an hour and a half later in Jury Communication #2).  However, the disorderly organization of the large amount of documents put into evidence by the Government, resulted in the inability to gather and assemble the documents relevant to the Counts requested by the jury.  The difficulty of compliance with the jury's request because of the disarray of the documents, turned into an impossibility to comply with the jury's request, when it was discovered that evidence that been removed from the Court room by the Government. The Government's action of removing evidence from the Court prevented the jury from receiving the requested evidence that was vital to the Defendant's defense, prior to the jury rendering its verdict.  This action in particular, prevented the timely and orderly receipt of requested evidence into the jury room, and resulted in violating Defendant's right to Due Process under the law by blocking his ability to present a complete defense under the United States Constitution.

After the return of the verdict, the Court voiced its concerns with the failure of the evidence being sent back to the jury, and directed that the evidence be sent back to the jury in any event.[12]  However, sending the evidence back at that late time, without a previous instruction regarding the issues with the Government's evidence, did not remedy the miscarriage of justice that occurred in the two hours prior to receipt of the evidence.  Defense Counsel challenged the jury to "verify what I am saying" by simply finding the advertisements that were sitting on the table right beside the jury box. The jury accepted the defense's challenge when it asked to see the advertisements that had not been sent into the jury room. Clearly, the jury believed that defense

---

[12] See Trial Transcript, Page 90, lines 18 -25.

failed miserably in meeting the challenge it had proposed to the jury. The jury did not believe Defense Counsel because if verifying the existence of the "Defendant's" advertisements was such a simple task then those advertisements would have been produced in a matter of minutes. The verdict rendered here constitutes a manifest injustice in light of the evidence admitted at trial, but not provided to the jury for review when requested. Such actions violated Defendant's rights to Due Process of law and to present a complete defense under the United States Constitution. Accordingly, the facts of this case support that the Court should grant the defense its motion for a new trial pursuant to Fed. R. Crim. Pro. 33. *See United States v. Johnson,* 302 F.3d 139, 150 (3d Cir.2002)

## B. <u>Prosecutorial Misconduct Created an Unfair Trial for Defendants</u>

Generally, the Government's failure to produce, disclose, or preserve evidence has been grounds upon which to reverse a conviction. *See* U.S. v. Brady, 373 U.S. 83 (1963) (failure to disclose material exculpatory evidence is reversible error and denial of Due Process). Such a failure has been found to be a violation of a Defendant's Due Process right to a fair trial.

In *Smith v. Phillips,* 455 U.S. 209 (1982), the Court found "the touchstone of Due Process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Id.* at 219. The Court thus recognized that the aim of Due Process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Id., quoting Brady v. Maryland, 373 U.S. 83 (1963).* With respect to prosecutorial misconduct, a miscarriage of justice occurs where the Government improperly conducts itself during trial in a prejudicial manner. *Marshall v. Hendricks*, 307 F.3d 36, 64 (3d Cir. 2002). The Court in *Marshall* noted the Government's improper conduct is not in itself enough to establish constitutional error. *Id.* However, "when the *impact* of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial," then the impropriety may constitute a denial of Due Process.

The Government's obstruction of the evidence has been found violative in many different circumstances. *See, e.g.*, *Gregory v. U.S.*, 369 F.2d 185 (D.C. Cir. 1966) (prosecutor interferes

with Defendant counsel's ability to interview potential witnesses); *State v. Boettcher*, 338 So.2d 1356 (La. 1976) (fundamental fairness dictates that the prosecutor is forbidden from denying the Defendant the means necessary to conduct an evidence defense); *Barnard v. Henderson*, 514 F.2d 744 (5th Cir. 1975) (depriving a Defendant of access to evidence that might establish his innocence is just as much a suppression as if the evidence existed and the prosecutor withheld it).

In *Government of Virgin Islands v. Testamark*, 570 F.2d 1162 (3d Cir. 1978), the Third Circuit found "[l]oss or destruction of relevant evidence by the Government not only raises general questions of the fundamental fairness of a criminal trial, but may also deny a Defendant the right to compulsory process." *Id.* at 1166. The Court commented on fundamental aspects of a defense, including the right to subpoena evidence and disclosure of exculpatory evidence, as "inherent in the conception of a criminal trial as a truth-seeking process." *Id.* In *Testamark*, the Third Circuit found that reversal was unwarranted because the materiality of the lost evidence was unknown and speculative because it was no longer available. However, the *Testamark* Court did not comment or address the circumstance where the evidence was lost and the materiality and impact of the evidence are well known.

Here, however, the materiality of the evidence is clear because the newspapers were central to the issue of intent as to mail fraud as to all counts of the indictment. Moreover, the defense specifically directed the jury to the advertisements, and the jury sought to review them during deliberations. In contrast to the facts in *Testamark* case, this is a case where the materiality of the evidence was known and not speculative. The inability to provide the jury with otherwise admitted, material evidence because of the Government's actions, should have the same result whether that actions resulted in the loss or destruction of evidence, or the removal of the evidence from the Courtroom, making it unavailable for deliberations. In either event, the Defendant is denied of his Constitutional rights, and a reversal is warranted.

The Verdict Sheet in this case was general, finding Defendant guilty of a Count without setting forth more, such as any theory or theories. Therefore, it cannot be ascertained if some alternate theory of criminal liability was established. The failure of the jury to receive vital, requested evidence warrants an Order for a new trial in this matter.

### C.      Fed. Rule 29 Requires a Judgment of Acquittal

Pursuant to Fed. R. Crim. Pro. 29, a Court may enter a judgment of acquittal of any offense where the evidence is "insufficient to sustain a conviction." The Court must view the evidence in the light most favorable to the Government to determine if any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

Presently, the inability of the jury to review admitted evidence, which evidence it specifically requested, and which evidence was vital to the defense raised by the Defendant, supports a Judgment of Acquittal pursuant to Rule 29,  and thereafter the issuance of an  Order for a New Trial, pursuant to Rule 33.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendant Cvjeticanin respectfully requests that the Court enter an Order granting a new trial.

Respectfully submitted,

**LORRAINE GAULI-RUFO, ESQ.**
**THOMAS AMBROSIO, ESQ.**
Attorneys for Defendant Cvjeticanin


/s/ *Lorraine Gauli-Rufo*
 LORRAINE GAULI-RUFO

 */s/ Thomas Ambrosio*
 THOMAS AMBROSIO

Dated: July 13, 2015