IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 14-274(MAS) |
| | : | |
| MARIJAN CVJETICANIN | : | |
| | : | |
| Defendant. | : | |

_____

**REPLY BRIEF TO GOVERNMENT'S OPPOSITION TO DEFENDANT MARIJAN CVJETICANIN'S MOTION FOR A NEW TRIAL PURSUANT TO RULE 29 and Rule 33**
_____

Lorraine Gauli-Rufo, Esq.,
130 Pompton Avenue
Verona, NJ 07044
(973) 239-4300

Thomas Ambrosio, Esq.,
750 Valley Brook Avenue
Lyndhurst, NJ 07071
(201) 935-3005

Attorneys for Defendant
Marijan Cvjeticanin

## SUMMARY OF ARGUMENT IN REPLY

Defendant Marijan Cvjeticanin respectfully submits this reply in response to the Government's opposition. In its response, the Government unnecessarily complicates the issue before this Court. The issue is quite simple. During deliberations the Jury requested to see evidence that had been admitted but not published at trial. An unreasonable delay in providing this evidence to the Jury - caused by a failure to follow proper protocol - resulted in the verdict having been rendered before the Jury was able to review the evidence. The failure to provide the Jury the previously unseen exculpatory evidence it requested deprived Defendant of his Constitutional right to a fair trial.[1]

## PROCEDURAL SUMMARY

The Defendant filed a timely motion for a new trial pursuant to Rule 33 and Rule 29.[2] The Court issued a Scheduling Order on July 9, 2015, giving Defendant four days to file his initial brief. Defendant Cvjeticanin filed his Brief with the Court on July 13, 2015, and

---

[1] The Government mischaracterizes Defendants issues throughout its Opposition, e.*g.,* Govt. Brief., p. 1-2. It is **not true** that "Defendant's counsel *agreed* with the government that the newspaper evidence would not be given to the jury" when it started deliberations. A Due Process violation occurred when the jury was not given the unpublished, admitted evidence after it was specifically requested by the jury on two occasions, and before the jury rendered its verdict.  *See* Jury Note 1 and 2.

[2] Fed. R. Crim. Pro. 33 requires that a Notice of Motion be filed within 14 days after the verdict or finding of guilty. Defendant's Notice was filed on July 7, 2015, eight days after the Verdict was filed on June 29, 2015.

supplemented that Brief on July 17, 2015.[3] The Government was given two weeks to file opposition. The Defendant was given one week to reply to the Government's opposition.[4]

### ARGUMENT IN RESPONSE

I. **THE EVIDENCE WAS EXCULPATORY IN NATURE.  A NEW TRIAL HOWEVER IS NECESSARY REGARDLESS OF THE NATURE OF THE EVIDENCE**

The defense maintains that the evidence requested by the Jury was exculpatory and went to the heart of the defense theory. The failure to provide the Jury the previously unseen exculpatory evidence it requested deprived Defendant of his Constitutional right to due process and throws into question the fairness and integrity of the trial.

The Government incorrectly argues that the evidence is inculpatory.  The Government contends that the Defendant's right to a new trial is contingent upon the requested evidence being deemed exculpatory evidence.  The Government is wrong.  The Government completely misses the point, *i.e.*, that failure to timely provide evidence to the Jury impermissibly interfered with the Jury's fact finding functions, destroying any legitimacy to the verdict.  Regardless of how the Court classifies the evidence, it was a fatal error to allow the Jury to continue to

---

[3] The Government's attempt to characterize Defendant's supplemental Brief as a "Motion" (and thus assert it is somehow time-barred) is one of many attempts in its Brief to outwardly mislead the Court and divert attention from the real issue before the Court. (*See* Govt. Br., p. 3, fn2).  This statement also reveals the Government's lack of understanding of the Federal Rules of Criminal Procedure and/or the difference between a "Notice of Motion" and a Brief.  Defendant's supplemental filing on July 17, 2015, was not a motion filing but was a ***brief*** that supplemented his initial Brief. Defendant's Rule 33 and Rule 29 motions were both filed within the required time.

[4] Given the extremely short time frame the Defendant was given to review the trial transcripts and file a Brief, and the two weeks the Government was given to respond, the Court should dismiss the Government's claim that Defendant's Supplemental Brief should not be received by the Court. The Supplemental Brief dealt with a substantial violation of Defendant's Constitutional rights. A violation revealed to defense counsel only after its initial Brief was filed.   In addition, despite having two weeks to submit its opposition Brief, the Government's brief for the most part fails to provide citations to the transcript to support its position, makes arguments regarding unadmitted evidence, and makes broad claims totally unsupported by anything in the record. *See* Govt. Br., pp. 1-8 (no cites to record), 24-29(unadmitted evidence).

deliberate without the information it wanted to review, and worse to allow the Jury to render a verdict before it could review the evidence.

## II. THE OPPOSITION IS FULL OF INAPPRORIATE AD HOMINEN ATTACKS UNRELATED TO THE LEAGL ISSUE RAISED IN THE MOTION.

The Government's opposition is full of glaring misrepresentations and unprofessional jabs at Defendant's counsel[5]. These tactics obfuscate the issues in a failed attempt to divert the attention from the simple issue raised in this motion – the Jury did not get to review critical evidence that it requested - evidence that was admitted but not published - the Defendant was denied of his Constitutional right to a fair trial.   The Government's *ad hominen* attacks should be disregarded by the Court.

The Government's brief fails to cover-up or even gloss over the egregious mistakes made by both the Court and the Government in the handling of admitted evidence in this case. The biggest attempted cover-up by the Government is the argument that no Constitutional violation occurred because the Court held off on receiving the Jury's Verdict when it was initially announced.  Delaying the receipt of a verdict that was already rendered in an attempt to provide the Jury with evidence it requested during deliberations – but did not receive - is of no moment.  The Constitutional violation occurred when the Jury rendered its verdict, not when the Court received it.  The Court immediately recognized the serious constitutional violation that had occurred. This is evidenced when the Court attempted to provide the evidence the Jury requested – but never got to see -  "I think it's only appropriate just so that they make sure what they

---

[5] The inclusion of an email communication between defense counsel and an AUSA is particularly disturbing. Especially an incomplete email.  Govt. Br., Ex. B.  As is the highlighting inconsequential statements from defense counsel such as "Thank you, Your Honor."   This is just another attempt by the Government to divert attention from the true problem in this case – the denial of Constitutional rights of Defendant Cvjeticanin.

requested initially *has no bearing **whatsoever** on their verdict*". (6/29/15 Tr. at 91-92) (emphasis added) It will never be known whether providing the Jury with unpublished trial evidence - after the Jury rendered its verdict - had any bearing on the ultimate verdict. The Jury was not given any instruction by the Court to resume deliberations utilizing the evidence the Jury had requested almost 3 hours prior to the announcement of a verdict. It is not known what, if anything, the Jury did with the evidence it was given post-verdict.

The Government's actions were reprehensible both during trial, when it removed evidence from the Courtroom, and post-trial when in its brief it attempted to deflect blame and mislead the Court. The Government's attempts to shift the attention or blame onto defense counsel do not negate the constitutional error that occurred at trial.

### III. THE REOCRD SHOWS THAT THE EVIDENCE WAS MISHANDLED AND THAT THE JURY WAS DEPRIVED OF THE ABILITY TO REVIEW CRUCIAL DEFENSE ORIENTED EVIDENCE BEFORE RENDERING THE VERDICT.

Review of the record establishes unequivocally that the evidence was mishandled. The mishandling of evidence was not a minor error. This was a major mistake that deprived Defendant of a fair trial.[6] The Government fails to acknowledge the slightest irregularity in the post-closing handling of evidence in this case. The Government's analysis of the facts in this case leads to the absurd conclusion that the evidence handling procedures utilized in this case

---

[6] The Government's argument that Defense Counsel's comments to the Court implicitly sanctioned the exhibit handling procedures used in the trial is an unfair distortion of the facts. *See* Govt. Br., p. 19. Defense counsel never agreed that that ***the jury should not receive requested evidence prior to rendering its verdict, or that the Government should remove admitted evidence from the court room.*** The evidence handling procedures at the trial mandate a new trial under either by way of R.33, R.29, under **any** standard – even plain error. (***See eg.***, *United States v. Brennon*, 326 F. 3d. 176 (3d. Cir. 2003).

would be acceptable in *all* cases.  Depriving a deliberating jury from viewing requested evidence and/or taking admitted evidence out of the courtroom during jury deliberations is <u>never acceptable</u>. To argue otherwise would amount to intellectual dishonesty. The United States Attorney's Office is sworn to uphold justice and the Constitution. To argue that the evidence handling in this case was acceptable is contrary to both justice and the Constitution.

Standard post-closing, evidence handling procedures include the following non-exhaustive steps:

- Courtroom Deputy gathers the evidence admitted by both parties;

- Courtroom Deputy reviews the admitted evidence with each side. The parties agree on the record as to each item of admitted evidence;

- Both sides are given the opportunity to state, on the record, that a particular piece of evidence should not go into the jury room;

- Any disputes as to admissibility or handling of evidence (*e.g.* whether a particular piece of evidence should go into the jury room) are resolved by the Court on the record;

- After complete agreement concerning admitted evidence, that fact is placed on the record, Counsel are excused and advised to remain available for Jury questions and/or a Verdict.

- The evidence is given to a designated Court Officer, who is given an oath to keep the Jury and evidence free from outside influence.

All of the above evidence handling procedures did not happen in this case.[7]  *See* July 29, 2015, Transcript, p.86, lines 10-11.  It was not until after the first Jury communication was received

---

[7] The Government's suggestion that the Court actually "took custody" of the evidence is a farce meant to mislead. While the Court did ask the Deputy if she had all the Exhibits and Documents, (6/25/15 Tr. at 110) this clearly was not the case since the Government retained complete control over the newspapers, and even removed at least

(***nearly two hours after*** Jury deliberations had begun[8]) when Defendant's counsel requested that the evidence be <u>taken back from the Jury</u> so that the evidentiary handling procedures set forth above could be complied with.  *See* 7/29/15,Tr. at p. 87, lines 16-22.  The entire process was flawed from the start and culminated in the Jury rendering a verdict with incomplete evidence.

Defendant submits that when the Court took back all the evidence previously given to the deliberating Jury the Court should have brought the Jury back into the courtroom and instructed the Jury to cease deliberations until it was given back all the evidence, including the evidence that Jury had requested which was unpublished during the trial.

The improper evidence handling procedures utilized by the Court compounded by the Court's failure to instruct the Jury to stop its deliberations mandate a new trial. If there is any doubt as to whether a new trial is mandated in this case then it should be erased by the egregious conduct of the Government when it removed admitted evidence from the Courtroom.[9] The level of egregiousness is heightened in this case because evidence requested by the Jury was critical to the Defendant's defense, had been admitted into evidence, but had not published by either party. This evidence was specifically requested by the Jury – not once, but ***twice.*** (*See* Jury Note 1 and

---

one from the Courtroom. (7/29/15 Tr. at 90).

[8] The Jury was dismissed to begin deliberation at 12:07 pm (6/29/15. Tr. at 86, lines 8-9). Defense Counsel put on the record that the Government and Defense Counsel had reviewed the evidence (which had been removed from the jury room after deliberations had begun and sometime after the first note was received so that counsel could review what evidence) between 2:07 pm and 2:11 pm. (6/29/15 Tr. at 86-88).

[9] There is **no question** that the evidence was removed from the Courtroom by the Government. The record establishes that after the Verdict was rendered Mr. Navarro informed the Court to the newspapers for Count 5: "…let me call the office, because they were getting that newspaper. It could be that they're on their way back right now and if we wait two minutes we can send them the whole thing." 6/29/15 Tr. at 92.   The Government in its Brief once again purposefully misleads the Court as to what happened by arguing that it did not remove evidence from the Courtroom. Govt. Br. at 30, fn 8. (Missstating the facts that occurred at trial and stating in part: 1) that Defendant was manufacturing this issue, 2)that Defendant was speculating as to what was removed from the Courtroom, and 3) that the Government only took "duplicate exhibits" from the Courtroom).

2, Ex. A and Ex. B, respectively). The Jury could not review this evidence because the Government had made it *unavailable* by removing it from the Courtroom.

The record establishes that at the time the Jury returned its verdict it had never received the requested evidence for Count 5. There is also nothing in the record to establish that the Jury received the evidence it requested for Count 1 prior to rendering its Verdict. The Government states in its brief that there was merely was a "*slight delay*" in getting the evidence to the Jury. The Governments claim that it only took 30 minutes to get some of the initially requested documents to the Jury is an outright fabrication. The true length of the initial delay is established by the Record. The Jury's second Note states "we have been waiting for over an hour!" The Jury would not have added an exclamation mark to its note if it felt the failure to provide evidence was a "slight delay".

The egregiousness of the delay is magnified when one considers the fact that the Jury was advised in closing arguments that the requested evidence was sitting on a table approximately 6 feet from the jury box. One can infer that if the Jury believed defense was being truthful in closing arguments about the existence of the evidence (not whether it was exculpatory or inculpatory) then the Jury would also have believed the evidence would have been provided to the Jury in a matter of minutes. The "long inexcusable delay" in not providing the evidence caused the Jury to believe that defense counsel told it a lie. This, in turn, unfairly led the Jury to believe that Defendant was a liar and unfairly caused the Jury to convict the Defendant.

The following outline establishes where the evidence was at various times during Jury deliberations:

- 12:07 pm - Jury sent to deliberate – Counsel excused (7/29/15 Tr., p 86, lines 8-14).

- 1:10 pm – First Jury Note sent to Court "need newspapers for <u>count</u> <u>one</u> & <u>five</u>." (emphasis in original)(Ex. A).

- 2:07 pm - Court reconvenes

    o **The evidence is taken out of the Jury room sometime after first Jury Note received** (7/29/15 Tr., p 86, lines 8-14).

    o Defendant's Counsel puts on Record the parties have *just* reviewed the evidence (absent the newspapers) and parties agree on it (*Id.*, p. 87, lines 16-22). **This is more than two hours after the deliberations had started.**

    o **Court directs Government to send all newspapers back to Jury.**

- 2:11 pm – Court in recess (*Id*., p. 88, line 9).

- 2:38 pm – Second Jury Note sent "What is going on? We have been waiting for over an hour!" (emphasis in original( Ex. B).

- 2:42 pm – Court reconvenes.

    o Government notes that **all evidence is not in the Jury room but rather in the Courtroom**:

    - "….The Court has, over there copies of all the exhibits aside from the newspapers including Computer World. Then in the top box is all the relevant newspapers for Count 1. We are now putting together Count 5." (**it is now 1 hour, 32 minutes since the Jury request for Count 1 and Count 5 newspapers – it still has not received them**)

    o The Court directs the Government to "move as quickly as possible."

- 2:45 pm Court in recess.

- 2:57 pm – Third Jury Note sent to Court " we have a verdict" (Ex. C).

- 3:09 pm – Court reconvenes. It is clear from the Record that the evidence requested by the Jury was in the Courtroom up until 2:45 pm. The Record is unclear whether the evidence was returned to the jury room prior to the Jury rendering its verdict. (Based upon Mr. Navarro's colloquy to the Court below - there is a strong reason to believe it had not been returned to the jury room.)

    - "All the documents are here[10], all the newspapers for all counts except for one newspaper that we are getting from the U.S. Attorney's Office. I think that it was inadvertently taken back there. So minus that one newspaper, we have everything….. It was Count 5, Judge. It's that one newspaper that we are missing related to Count 5, of course." (Transcript, p. 90, lines 8-13, 16-18).

    - Court directs Government to get the newspaper and give it to the jury with no instruction. (7/29/215, Transcript, p. 91 – 92).

    - Government addresses the Court:

        - "Your Honor, the only thing I would ask if you could let me step outside for 30 seconds, let me call the office, because they were getting that newspaper. It could be that they're on their way back right now and if wait two minutes we can send them the whole thing." (6/29/15 Tr. at 92) The Verdict has been rendered and the Jury does not have the requested Court 5 evidence, nor does it have other evidence since the Government wants to send in the "whole thing" once it receives Count 5 evidence from its office.

- 3:11 pm – Court in recess.

- 3:35 pm – Fourth Jury Note sent to Court "WE HAVE A VERDICT!" (emphasis in original) (Ex. D).

- 3:44 pm – Court reconvenes.

The Government is correct when it states in its brief that the Jury *could have* convicted Defendant on mail fraud solely on its determination that he did not place Computer World ads.

---

[10] "Here," indicates the evidence is in the Courtroom, not with the Jury.

The more salient point is that the Jury *chose not to convict* solely on lack of Computer World ads as evidenced by its request to see evidence that was not published during the trial. In support of its argument that the Defendant did not commit fraud - because he had placed newspaper advertisements - defense in closing arguments directed the Jury to look at advertisements that were in evidence, but not published during the trial. The Jury agreed to consider this defense argument evidenced by the fact that the Jury requested to review newspapers in relation to Count 1, an audited file, and Count 5 a non-audited file. The jury was not able to examine the requested newspapers because of the improper evidence handling by procedures utilized in this case. The record establishes unequivocally that the Jury **DID NOT** receive the evidence it requested for *Count 5* prior to rendering its verdict. Moreover, the record does not establish that the Jury received Count 1 newspapers, before the Verdict was rendered. In fact, the Record strongly suggests that the Jury did not receive newspapers for Count 1 or Count 5. (*See* above). The jury deliberated without information that it deemed important enough to request. The verdict was unfairly rendered without a complete review of the evidence. The evidence handling procedure improprieties in this case violated Defendant's Constitutional Rights. A new trial is required.

The Government has suggested that the Court can grant a new trial on Count 5 alone. That argument has no merit since the Defendant put forth an "all or nothing defense." The defense theory argued in closing was that the Defendant had no intent to defraud because he had paid for and placed advertisements for all counts in the indictment. The defense further argued that on various occasions the advertisements he had placed were not sufficient to withstand an audit. On those occasions the Defendant paid for and placed corrective ads. It was argued that the corrective ads were not placed in order to defraud the corporate victims but rather to withstand a

Department of Labor audit. This defense would only have validity if the Defendant was able to establish that he actually paid for and published advertisements. The Defendant never got to establish to the Jury the fact that he placed such ads because the Jury never got to see those advertisements - a direct result of improper evidence handling procedures.  The Defendant's defense argument was unfairly compromised and his Constitutional Rights violated. A new trial must be given for all counts in the indictment, not just Count 5.

      The Jury was not able to determine in its deliberations whether Defendant's assertions were true, *i.e.,* that it placed advertisements. This is because the Jury was not provided with the requested evidence.  The Jury is a trial's finder of fact.  The Jury did not receive the evidence it requested. The Jury's fact finding function was broken because it was not given all the evidence needed for that fact finding function to work. The Government, in its brief, seems to want this Court to believe that it is the Government's post-trial job to become a Monday morning quarterback or surrogate finder of fact based upon the evidence the Government presented at trial. The Government cannot be a surrogate finder of fact, it cannot tell this Court how the Jury would have determined the facts had the Jury received the evidence it requested.  The Government cannot say what the Jury would have determined had it received the evidence it requested. The opinions in the Government's brief about what a Jury would have determined have no legal weight.

      Neither of the parties, nor this Court cannot know for sure what might have happened if the Jury received and reviewed the requested evidence. When the Jury did not receive the requested evidence Defendant lost his Constitutional Right to a fair trial. This was not harmless error. The newspaper ad evidence went to the heart of the theory of the defense.

## IV.   RELIANCE ON UNADMITTED EVIDENCE OR OTHER EVIDENCE AT TRIAL DOES NOT NEGATE THE CONSTITUTIONAL ERROR.

The Government sets forth evidence that was ***not admitted at trial*** in an attempt to convince the Court that the advertisements referred to in the defense closing arguments were in inculpatory and therefore render the defense arguments meaningless and a new trial not required. This argument is without merit, and evidence not admitted a trial is not persuasive.  This is a transparent attempt by the Government to correct what it now believes was a tactical trial error made at trial. The Defendant chose not to cross examine the Government's witnesses about the existence of advertisements referred to in the defense's closing. In closing it was argued the admitted but unpublished ads were exculpatory. This defense trial strategy prevented any Government witness from stating that the subject advertisements could not have been advertisements related to the counts 1 – 9 of the indictment. (If the defense had cross examined any witness about the ads then it is highly likely the Government would have published the ads on redirect testimony and would have attempted to elicit a response that the ads were not valid - much the way it did in its brief.)  Unadmitted evidence, and even other admitted evidence does not fix the Constitutional violation that occurred.  The only remedy here is a new trial.

Lastly, this case is distinguishable from the situation in the Government's brief where a Jury requests the transcripts of a witness's testimony - a witness who has already testified at trial. The advertisements at issue in this motion for a new trial were never seen by the Jury during the trial. The newspapers were entered into evidence by the Government upon stipulation from the Defense and never published to the Jury. The decision not to publish the advertisements was also

a tactical decision by the Government. Defense Counsel informed the Jury in its closing that Defendant had placed advertisements, and urged the Jury to look at the newspapers relevant to each of the applicants. The Jury acted upon that urge when it requested the newspapers for Counts 1 and 5. The Jury never received that evidence prior to rendering its verdict. That amounted to Constitutional error that directly implicated the fairness and integrity of this trial.

## CONCLUSION

For all of the foregoing reasons, a new trial should be granted in this case.

Respectfully submitted,

By: /s/ Lorraine Gauli-Rufo
/s/ Thomas Ambrosio

Attorneys for Marijan Cvjeticanin

DATED: August 3, 2015