LAW OFFICE OF
# LORRAINE GAULI-RUFO, ESQ.
### CERTIFIED CRIMINAL TRIAL ATTORNEY
### (LGR LAW, LLC)

NEW JERSEY OFFICE
130 POMPTON AVENUE
VERONA, NJ 07044
(973) 239-4300



NEW YORK OFFICE
48 WALL STREET, 5TH FLOOR
NEW YORK, NY 10005
(646) 779-2746

LGAULIRUFO@GMAIL.COM
WWW.LGAULIRUFO.COM
FAX: (973) 239-4310

———

March 17, 2016

Honorable Michael A. Shipp
United States District Court Judge
Clarkson S. Fisher Building & US Courthouse
402 East State Street
Trenton, NJ 08608

       Re:    United States v. Marijan Cvjeticanin
                 Crim. No. 14- 274(MAS)

Dear Judge Shipp:

      Marijan Cvjeticanin submits this letter brief in response to the government's March 16, 2016, submission requesting that Your Honor cancel the restitution hearing scheduled for March 23, 2016, and impose $1,316,902.90 in restitution. Mr. Cvjeticanin respectfully requests that the hearing remains as scheduled. Mr. Cvjeticanin is and has been in the process of preparing for the hearing with the scheduled date in mind, and anticipated filing a submission early next week. However, in light of the government's submission, Mr. Cvjeticanin submits this letter brief addressing the following issues: 1) requesting that Your Honor keep the hearing date currently scheduled for March 23, 2016; 2) responding to the government's assertions set forth in its letter

1

of March 15, 2016; 3) setting forth the arguments that Mr. Cvjeticanin intends to raise at the hearing; and, 4) notifying the Court and the government of Mr. Cvjeticanin's intention to request bail pending appeal.

Initially, Mr. Cvjeticanin notes that the complexity in the calculation of restitution as well as the outstanding issues remaining, including the outstanding issues noted by the Court in the sentencing hearing regarding the "money forfeiture order," necessitate oral arguments on these issues. As noted in the government's submission citing to the Forfeiture Money Order, the Court specifically "reserve[d] the right to modify" the amount of forfeiture at the restitution hearing. Mr. Cvjeticanin respectfully requests an opportunity to address these issues in due course at the hearing as Your Honor previously scheduled. The following sets forth a preview of the issues surrounding the calculation of the amount of restitution as well as forfeiture that Mr. Cvjeticanin intends to raise at the hearing, and also lays out the reasons necessitating a hearing.

### Amounts set forth in Governments Exhibit D and E are Inaccurate

The government argues that restitution is calculated as "the amount wrongfully taken by the defendant." *United States v. Bryant*, 655 F. 3d 254,(3d Cir. 2003). The government thereafter attempts to add $ 676,700 to the amount determined by the Court as the amount of loss and forfeiture amounts, by claiming that the total amount of all the invoices introduced at trial (212), and calculated by the government in its "Loss Chart" and contained in sections D and E (ADP and Broadridge invoices over a two-year period), should be included in the restitution calculation. In doing this, the government tries to parlay the figures set forth in its actual loss chart used at sentencing, amounts that were rejected by the Court in calculating amounts of loss, to now be so used for restitution purposes. However, this is problematic for a number of reasons.

First of all, *only some* of the invoices set forth therein were for advertising purposes, some invoices had no advertising purposes and/or contain no dates, as they relate to some other legal services, and for some of the invoices, Flowerson was prevented from advertising in relation to them because of a cease and desist order issued to Flowerson from Wildes and Weinberg in November 2012. Therefore, as to many of the invoices introduced at trial, the amounts set forth in those invoices cannot be determined to have been proximately and directly caused by Mr. Cvjeticinan's alleged illicit actions, which is required by the restitution statute. *See* 18 U.S.C. § 3663A(a) (2). There was never a determination regarding these invoices, and even at trial both Mr. Weinberg and the government noted that not all the invoices were fraudulent – that *some* advertisements were placed. If even one newspaper advertisement was placed as relating to those invoices, the calculation for restitution or forfeiture cannot be found to be the *total* amount of those invoices. Moreover, the calculation of restitution totally ignores the amounts that Mr. Cvjeticanin introduced at the sentencing hearing, showing that Flowerson actually advertised for at least $83,000 worth of advertisements during that time period relating to advertisements placed for ADP and Broadridge. These amounts have not been deducted from restitution or forfeiture amounts or addressed in any fashion during the last hearing. This issue and the arguments raised find further support by a recent ruling by the U.S Department of Labor stating that wrong geographical location stated in a Labor Certification pertaining to advertising, does not invalidate the advertisements, *See in the matter of DGN Technologies, Inc, case no- 2012-PER 01647*. This is significant for restitution and forfeiture determinations, because what this suggests is that the amount of over $80,000 spent by Flowerson could have covered all or most of the 212 invoices contained in the government's trial exhibits.

Mr. Cvjeticanin introduced a compelling chart at sentencing that the government did not contest or dispute. (*See* Exhibit A, Attached to the Sentencing Memorandum submitted by Lorraine Gauli-Rufo, dated February 10, 2016). The chart establishes that based upon the evidence submitted in this case at trial and at sentencing, the amount of re-filings and re-advertisings alleged by Steven Weinberg in many affidavits and on the stand at trial, were in fact considerably far less than claimed, amounting to approximately 25% of all original invoices. This calculation was arrived at by reviewing the governments evidence at trial and comparing it to its sentencing submissions. In fact, to help further support his argument, Mr. Cvjeticanin submits the enclosed Exhibit A to further explain how the government's alleged calculations are grossly exaggerated and not supported by the evidence. These calculations have a direct effect on any amount of restitution and forfeiture based upon what was allegedly "wrongfully taken by the defendant."

In regard to this argument, Mr. Cvjeticanin has *repeatedly* requested from the government and the Court that in relation to the governments sentencing submissions, the redactions be removed from the names submitted to support the costs associated of re-advertising and re-filings, as well as those contained in the insurance invoices and checks issued to Wildes and Weinberg. This request has been repeatedly made so that Mr. Cvjeticanin can accurately defend against the amounts claimed for amounts of loss, forfeiture and restitution.[1] Any claim of attorney/client privilege as to these names or privacy issues must fail, since the government introduced all of the individuals named on the invoices at trial, in both invoices and documents

---

[1]. Mr. Cvjeticanin reasserts his objection to the failure of the Court to order the removal of the redaction of those names throughout this sentencing proceeding in the documents submitted by Weis and Weinberg for sentencing, restitution and forfeiture. As stated above and in sentencing submissions, this has prevented Mr. Cvjeticanin not only from adequately defending against allegations of amounts of loss, but also against forfeiture claims and restitution.

filed with the Department of Labor. None of the names were redacted at trial. ***Only now***, when Mr. Cvjeticanin is attempting to analyze and compare the documents submitted by the government in ascertain and perhaps argue against the government's claim for amount of loss, forfeiture and restitution, has the Government decided to redact those names, making it extremely difficult for Mr. Cvjeticanin to effectively defend against these claims.

Moreover, with respect to the invoices submitted for the insurance reimbursement, although the names are mostly redacted, what Mr. Cvjeticanin has been able to ascertain appears to include some names for which there were ***no invoices introduced at trial***, thus having ***no connection*** (not proximately nor directly) to Flowerson's advertising, raising further doubts regarding the amounts claimed for both restitution and forfeiture and thus supporting this request for a hearing. (*See* Exhibit B, attached hereto) The same can be said of the legal invoices submitted by the law offices of Wildes and Weinberg for restitution purposes, which were allegedly used to remediate any losses caused by the defendant, as neither client names nor any legal services provided are listed in these invoices. Accordingly, this is another reason the defense maintains that it has been thwarted in its efforts to effectively defend against the claims in this case, and a hearing is necessary not only to address these issues but determine the proper amounts that should be calculated for restitution and forfeiture purposes.

### Schedule G amounts are Inaccurate

Mr. Cvjeticanin also objects to the government's calculations of the amounts set forth in Schedule G, costs allegedly associated with the re-filings. Even with the redactions, Mr. Cvjeticanin was able to identify 13 matters which were not in the governments list of invoices presented at trial and relied upon at sentencing for amounts of loss. Analysis of these amounts are included in the chart attached hereto as Exhibit A. As stated previously, at least 13 matters

listed in the government's schedule "G", and which are submitted for restitution and forfeiture purposes, do not correspond to names that were listed as exhibits or introduced at trial for the invoices the government presented at the trial. The defense respectfully submits that this must mean that either Flowerson never billed ADP and Broadridge for these invoices or the cases were processed and advertising done after the defendant left his employment at Wildes and Weinberg. In either event, Mr. Cvjeticanin cannot and should not be held liable for restitution or forfeiture purposes under the circumstances. These names (13 of them) have never been tied to Flowerson and Mr. Cvjeticanin, and is just one of many ploys by the government to hold Mr. Cvjeticanin liable for restitution, forfeiture amounts and amounts of loss that that have not established were proximately or directly related to him, or have anything to do with him whatsoever.

**Request for Bail Pending Appeal**

In addition to the above requests that necessitate a hearing, Mr. Cvjeticanin anticipates filing a motion for bail pending appeal, and respectfully requests an opportunity to present argument at either the hearing scheduled for March 23, 2016, or another date set by the Court. If the Court requires or requests a brief with respect to this matter, Mr. Cvjeticanin respectfully requests set a briefing schedule.

**One Month Stay of Surrender Date**

Mr. Cvjeticanin has been notified by the BOP that his surrender date is April 5, 2016. In light of the anticipated motion for bail pending appeal, as well as the outstanding resolution of restitution and forfeiture, Mr. Cvjeticanin respectfully requests a one-month stay of his surrender to the BOP, in order to assist his attorney with the necessary documentation for all of these requests.

Respectfully submitted,

s/

Lorraine Gauli- Rufo
Attorney for Marijan Cvjeticanin

Attachments

cc: Dennis Carletta, AUSA
Francisco Navarro, AUSA